IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAYLA PENDER, | : |
| | : |
|     Plaintiff, | : Case No. 2:21-cv-4292 |
| | : |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| | : Magistrate Judge Jolson |
| FLYING S. WINGS, et al., | : |
| | : |
|     Defendants. | : |

### OPINION & ORDER

This matter is before the Court on Plaintiff's Motion for Conditional Certification of a Collective Action. (ECF No. 24). For the following reasons, this Court **GRANTS** Plaintiff's Motion, subject to the conditions of this Opinion and Order.

### I.    BACKGROUND

Plaintiff Kayla Pender, on behalf of herself and all others similarly situated, brings this action against Defendants Flying S. Wings, Inc.; Flying Buffalo Inc.; Chase & Green Corp.; Scott Lloyd; and Stephon Green, collectively d/b/a Buffalo Wild Wings ("Defendants"). (ECF No. 42). In her Second Amended Complaint, Pender alleges that Defendants engaged in violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA"), Article II, Section 34A of the Ohio Constitution ("Ohio Constitution"), and the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111.01, 4111.02, 4111.08, 4111.09, 4111.10, 4111.13, and 4111.99 ("the Ohio Wage Act" or "OWA"). Specifically, Plaintiff asserts her FLSA minimum wage claims as a collective action under 29 U.S.C. § 216(b) and her Ohio Wage Act minimum wage claims as a collective action under the Ohio Constitution and O.R.C. § 4111.14(k).

Defendants Flying S. Wings, Inc., Flying Buffalo, Inc., and Chase and Green Corp. (the "entity-Defendants") are entities which collectively do business as Buffalo Wild Wings. (*Id.* ¶¶

21–23). Defendants Scott A. Lloyd and Stephon Green are owners and operators of franchises of the entity-Defendants comprising the Buffalo Wild Wings locations in Ohio and West Virginia. (*Id.* ¶¶ 24–25). According to Plaintiff's complaint, Defendants Lloyd and Green "mak[e] operational and strategic decisions affecting employees, including decisions affecting the terms and conditions of the individuals employed to work for the entity-Defendants at their Buffalo Wild Wings franchises in Ohio and West Virginia." (*Id.*).

Plaintiff Kayla Pender was employed by Defendants as a server and bartender. (*Id.* ¶ 1). Plaintiff defines the putative FLSA collective members (the "FLSA Collective") as the following:

> [A]ll individuals who worked as servers at any one or more of Defendants' Buffalo Wild Wings restaurants in Ohio and West Virginia at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than the federal minimum wage.

(*Id.* ¶ 15).

Plaintiff defines the putative OWA collective members (the "OWA Collective") as the following:

> [A]ll servers and bartenders who worked at any one or more of Defendants' Buffalo Wild Wings restaurants located in Ohio at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than the Ohio minimum wage set for that year.

(*Id.* ¶ 16).

Plaintiff's Second Amended Complaint makes the following factual allegations. From October 2019 until June 15, 2021, Plaintiff worked for Defendants at the Buffalo Wild Wings restaurant located at 50725 Ohio Valley Place Access Road, Saint Clairsville, Ohio 43950. (*Id.* ¶ 46). During her employment, Defendants paid Plaintiff a subminimum hourly wage plus tips. (*Id.*). Defendants also employed others to work as servers and bartenders (for subminimum hourly wages) at their Buffalo Wild Wings locations in Ohio and West Virginia. (*Id.* ¶ 48). Defendants

relied on customer tips to supplement its servers' and bartenders' wages to bring their pay up to the required minimum wage. (*Id.* ¶ 50). Plaintiff refers to this practice as "impos[ing] a tip credit." (*Id.* ¶ 51–52).

Defendants never informed Plaintiff and its other servers and bartenders of the provisions of the tip credit. (*Id.* ¶¶ 54–55). Defendants also did not provide the servers with written notice of the amount per hour which Defendants took as a tip credit. (*Id.* ¶ 57). Defendants required Plaintiff and the putative collective members to purchase various items and incur expenses to perform their jobs, including uniforms and copies of payroll documents. (*Id.* ¶ 60). Defendants regularly and frequently required Plaintiff and the putative collective members to perform non-tipped duties unrelated to her tipped occupation while being paid subminimum hour wages. (*Id.* ¶ 63). These duties include taking out the trash, washing dishes, restocking various products, and sweeping and mopping floors. (*Id.*). Defendants also often required Plaintiff and the putative collective members to perform non-tipped duties that were related to their tipped occupation, such as setting tables, rolling silverware, and making specialty drinks. (*Id.* ¶ 66). These non-tipped duties exceeded 20% of the time that Plaintiff and the Collective Members worked in at least one workweek. (*Id.* ¶¶ 62, 67).

Plaintiff alleges that, during the three-year period prior to this suit, Defendants employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff. (*Id.* ¶ 70). Plaintiff alleges that she is aware of others who were required to pay for business expenses and perform non-tipped work while being paid subminimum hourly wages. (*Id.* ¶¶ 74, 82).

On August 31, 2021, Plaintiff filed her Complaint. (ECF No. 1). She filed her First Amended Complaint on November 4, 2021. (ECF No. 10). On November 11, 2021, the case was

referred to mediation. (ECF No. 13). On January 29, 2022, the parties entered into a Tolling Agreement, effective November 11, 2021. (ECF No. 24-10). The Agreement provided that Plaintiff's and the putative collective members' claims would be tolled from November 11, 2021, through the date of mediation scheduled for February 17, 2022. (*Id.*at 1). If the parties did not reach a settlement before or during mediation, the Agreement provided that Plaintiff's and the putative members' claims would be tolled through the date Plaintiff filed a motion for conditional certification and court authorized notice. (*Id.* at 1–2). Mediation was unsuccessful. (ECF No. 17).

Plaintiff then filed her Second Amended Complaint—the operative complaint—on June 15, 2022. (ECF No. 42). Plaintiff's Second Amended Complaint asserts two counts for relief: Count I (violations of the Fair Labor Standards Act) and Count II (violations of the Ohio Wage Act). Count I alleges that Defendants failed to pay Plaintiff and the FLSA putative collective members at the full minimum wage rate required by Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by; it also alleges that the expenses incurred by Plaintiff and FLSA putative collective members to pay for various tools and business expenses constituted unlawful kickbacks proscribed by FLSA, 29 U.S.C. § 203(m). Count II alleges that, during the three-year period preceding the filing of this lawsuit, Defendants regularly and repeatedly failed to pay Plaintiff and the OWA putative collective members the full minimum wage required by the Ohio Wage Act.

Plaintiff filed her Motion for Conditional Certification of a Collective Action on April 19, 2022. (ECF No. 24). Notwithstanding the fact that the instant Motion precedes the filing of the operative complaint, the relevant allegations are effectively unchanged. In her Motion, Plaintiff argues that she is similarly situated to the individuals contained in her proposed collective definitions for the purpose of certifying a collective action. Plaintiff attaches a sworn declaration

4

from herself and another employee, as well as various position descriptions and internal documents from Buffalo Wild Wings assigning its employees to non-tipped duties.

Plaintiff's Declaration, in relevant part, states the following. Plaintiff was paid a subminimum hourly wage, with Buffalo Wild Wings relying on customer tips to bring the wages up to the required minimum hourly rate. (ECF No. 24-1 ¶ 3). Plaintiff has personal knowledge that Buffalo Wild Wings pays all their servers and bartenders in the same manner from her conversations with employees who worked at the location in Moundsville, Virginia. (*Id.*). Plaintiff derived, from conversations with other servers doing the same work at both the Ohio and West Virginia locations, that the servers and bartenders "easily spent more than 20% of [their] time during [their] work shifts in each workweek performing non-tipped job duties." (*Id.* ¶ 8). Plaintiff alleges that her personal knowledge that "the other servers and bartenders were required to perform and complete the same job duties, including non-tipped job duties and side work" came from her employment, her employment documents, and "conversations with other servers and bartenders about our job duties and working alongside others who also performed the same non-tipped job duties as [her]self." (*Id.* ¶ 11). Plaintiff cites the same basis for her personal knowledge that she and the other servers and bartenders were required to incur expenses to perform their jobs and were uniformly subject to Buffalo Wild Wings' payment structure and policies at issue. (*Id.* ¶¶ 14, 16). Plaintiff also attached a declaration from Sara Bishop, who is also a former employee of the Saint Clairsville, Ohio location. (ECF No. 24-2 ¶ 2). Bishop's declaration contains substantially the same allegations.

## II. STANDARD OF REVIEW

The Fair Labor Standards Act provides that a court may certify a collection action brought "by any one or more employees for and on behalf of himself or themselves and other employees

5

similarly situated." 29 U.S.C. § 216(b). Similarly situated employees "are permitted to opt into" the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The plaintiffs bear the burden to show that the proposed class members are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). Notably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification under Federal Rule of Civil Procedure 23. *Id.* The FLSA does not define "similarly situated" and neither has the Sixth Circuit. *Id.* District courts conduct a two-phase inquiry to determine whether plaintiffs are similarly situated: conditional and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012).

In the first phase, conducted at the beginning of the discovery process, named plaintiffs need only make a "modest factual showing" that they are similarly situated to proposed class members, *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer*, 454 F.3d at 547), "which may include affidavits of potential plaintiffs or evidence of a widespread policy or plan." *Petty v. Russell Cellular, Inc.*, No. 2:13-cv-1110, 2014 WL 1308692, at *2 (S.D. Ohio Mar. 28, 2014). The standard at the first step is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)).

At this stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F. Supp. 3d at 765 (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees."

6

*Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015).

At the second stage, conducted after the conclusion of discovery, courts "examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. At this stage, the court has more information on which to base its decision of whether the proposed plaintiffs are similarly situated and, "as a result, it employs a stricter standard." *Id.* (alterations, internal quotation marks, and citation omitted).

### III. LAW AND ANALYSIS

#### A. CONDITIONAL CERTIFICATION

In her Motion, Plaintiff argues that both of her proposed collective definitions satisfy the "fairly lenient" burden justifying the grant of conditional certification of her proposed collective at the notice stage. According to Plaintiff, at the notice stage, courts only consider whether Plaintiff made a modest factual showing indicating that similarly situated plaintiffs exist—not whether they *indeed* exist. Plaintiff argues that courts in this circuit have held that plaintiffs are similarly situated if they were subjected to a "unified policy" of violations or if their claims are "unified by common theories of defendants' statutory violations." (ECF No. 24 at 10) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 582–83 (6th Cir. 2009); *Swigart*, 288 F.R.D. at 213). Plaintiff argues that her evidence demonstrates adequately that the members of the proposed collective have been subject to the same pay policies implemented by Defendants.

Plaintiff submits sworn declarations from herself and a putative collective member, Sarah Bishop. Plaintiff argues that these affidavits demonstrate that her allegations about the practices of the other Buffalo Wild Wings locations are based on personal knowledge and provide substantial allegations at the notice stage. Further, Plaintiff submits various task sheets and position

descriptions to support her claim that she is similarly situated to other putative class members because all servers "suffer from a single, FLSA-violating policy." (ECF No. 18 at 15–16) (citing *Nazih v. Café Istanbul of Columbus, LLC*, No. 2:17-cv-947, 2018 U.S. Dist. LEXIS 154283, *8–9 (S.D. Ohio 2018) (Marbley, J.)).

According to Plaintiff, the attached position descriptions show that Defendants own and operate jointly the locations at issue, given that the descriptions list open positions for all locations with identical job descriptions, duties, and responsibilities. Plaintiff argues that she derived her knowledge about the employment practices at the other locations from working with employees of Defendants' restaurants located in West Virginia and Ohio. Plaintiff notes that Defendants share employees between those restaurants. Plaintiff maintains that she thus demonstrated her knowledge that putative collective were subject to same company-wide policy. Plaintiff last argues that the three-year term included in the proposed collective definition should be approved. Because parties entered into their tolling agreement on November 11, 2021, Plaintiff argues, the collectives should include individuals employed by Defendants at any time since November 11, 2018.

Defendants argue that Plaintiff's proposed collective definitions are vastly overbroad and should be rejected. Defendants contend that Plaintiff provides inadequately limited personal knowledge and evidence regarding the pay practices at the other locations justifying her allegations as to those locations. As such, Defendants instead propose that Plaintiff's definition be limited only to current and former staffed servers and bartenders of the location where she worked. Defendants contend that limiting the geographic scope of collective definitions to those locations where Plaintiff or other declarants worked or have personal knowledge of the working conditions at the specific locations falls in line with previous rulings of this Court. (ECF No. 46 at 6) (citing *Bradford v. Team Pizza, Inc.*, 2020 U.S. Dist. LEXIS 113681, *8–11 (S.D. Ohio June 29, 2020);

8

*Lucyk v. Materion Brush, Inc.*, No. 3:20-cv-2340, 2022 U.S. Dist. LEXIS 137388, at *9 (N.D. Ohio Aug. 2, 2022); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-cv-675, 2017 U.S. Dist. LEXIS 126733, *12–13 (S.D. Ohio Aug. 10, 2017); *Engel v. Burlington Coat Factory Direct Corp.*, No. 1:11-cv-759, 2013 U.S. Dist. LEXIS 77506, *11–12 (S.D. Ohio June 3, 2013)). According to the Defendants, it would be contrary to this Court's prior holdings to permit certification of a collective comprised of individuals from multiple locations based on the limited evidence of employees whose personal knowledge is limited to working conditions at one location. In sum, Defendants argue that this case should reject Plaintiff's efforts to certify a multi-state collective based merely on the declarations of two employees with no personal knowledge of working conditions outside of their employed locations in Ohio.

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the action arose "out of a willful violation," in which case the lawsuit must be initiated within three years after accrual. 29 U.S.C. § 255(a). For conditional certification, Plaintiff's burden is merely to "show only that his position is similar, not identical to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011); *Comer,* 454 F.3d at 546–47 (internal quotation marks and citation omitted). Showing a "unified policy" of violations is not required. *O'Brien*, 575 F.3d at 584. Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585.

In determining conditional certification, courts have considered factors "such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted." *Castillo v. Morales*, 302 F.R.D. 480,

9

486 (S.D. Ohio 2014) (Marbley, J.) (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)). This Court has emphasized that Plaintiff's "modest" burden at this juncture is to demonstrate merely that "at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist[s]." *Id.* As this Court has previously noted, "[s]ome courts hold that a plaintiff can demonstrate that potential class members are 'similarly situated,' for purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices." *Id*. There is no threshold requirement for a certain number of affidavits from employees needed to conditionally certify a collective action. *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *4 (S.D. Ohio Dec. 9, 2011).

  This Court finds that Plaintiff has met her burden of setting forth a "modest factual showing that [she] is similarly situated to the other employees [she] is seeking to notify." *Brittmon v. Upreach*, LLC, 285 F. Supp. 3d 1033, 1043 (S.D. Ohio 2018). Plaintiff's evidence, comprising of declarations and job-related documents, provides at least some evidence that she is so similarly situated. The locations are owned by the same entities, which operate them as part of the same larger franchise. The position descriptions between locations are similar, if not identical. There is both inferential evidence that employees at either location may thus receive similar treatment as well as direct affidavit testimony alleging "unlawful pay practices at each of the restaurant locations identified in the Complaint, at about the same time and place, in generally the same manner, which affected Plaintiff and the putative class members in the same way." *Castillo*, 302 F.R.D. at 486. The claims of Plaintiff and the putative class members are unified by the common theory that Defendants' practices of paying subminimum wages without fulfilling the requirements to invoke the tip credit, requiring them to incur work-related expenses, and engage in substantial amounts of time performing non-tipped work while still being paid subminimum hourly wages

have violated the FLSA and OWA by causing them to work hours for which they were not properly compensated.

This Court granted conditional certification on similar facts in *Castillo*. There, the plaintiff brought suit under the FLSA and the Ohio Minimum Wage Fair Standards Act on behalf of herself and other employees who worked at various "El Vaquero" Mexican restaurants in and around Columbus. *Castillo*, 302 F.R.D. at 482. Defendants were corporate entities who owned the eight restaurant locations at issue. *Id.* Plaintiff there only worked at the Olentangy River Road location. *Id.* Based on her allegations, however, "[e]ach location [was] advertised to the public solely as "El Vaquero," . . . use[d] the same menu, adopt[ed] the same hours of operation, and . . . engaged in the exact same unlawful pay practices and policies." *Id.* This Court granted conditional certification based on Plaintiff's allegations of "unlawful pay practices at each of the restaurant locations identified in the Complaint, at about the same time and place, in generally the same manner, which affected Plaintiff and the putative class members in the same way." *Id.* at 486. Given these allegations, this Court found that Plaintiff and the putative class members were properly "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Courts have also similarly considered, in their "similarly situated" analyses, job postings submitted for the purposes of showing general uniformity in position duties across locations. *See, e.g., Adams v. Wenco Ashland, Inc.*, No. 1:19CV1544, 2020 WL 2615514, at *6 (N.D. Ohio May 22, 2020).

Defendants' chief argument is that Plaintiff fails to demonstrate that she had personal knowledge such that her allegations as to the other locations are justified. But Plaintiff alleges that she gained personal knowledge through observation and conversations with employees of the other locations. Defendants' argument thus appears to challenge the *sufficiency* of her allegations that

11

she had personal knowledge rather than whether she asserts them. But the Court is not called upon to make credibility and factual determinations at the conditional certification stage. *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 876 (S.D. Ohio 2017); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 893 (S.D. Ohio 2016) (Marbley, J). In *Castillo*, like here, Plaintiff submitted affidavits supported by evidence of the questioned practices. Plaintiff also submitted evidence of the various non-tipped server duties for which she alleges the Defendants paid subminimum wages. (*See* ECF No. 24-3). Plaintiff attached job postings that use identical language in describing the position of server for the various locations. In fact, Plaintiff's evidence shows that prospective applicants can view positions for the various locations owned by Defendants on the *same* webpage. This evidence that Plaintiff and her co-workers were expected to perform non-tipped duties and that Defendants operated the businesses in similar fashions to at least some degree, paired with Plaintiff's affidavits, establish "at least a colorable basis for [her] claim that a class of 'similarly situated' plaintiffs exist[s]." *Castillo*, 302 F.R.D. at 486. This is sufficient at this stage. *See Hamm*, 275 F. Supp. 3d at 877.

In the event that their mediation proved unsuccessful, the parties' Tolling Agreement provides "that . . . all claims for putative collective members are tolled as of the effective date of this agreement through the date of filing an opposed or unopposed motion for conditional certification and court authorized notice." (ECF No. 24-10 ¶ 2). Defendants do not contest Plaintiff's request to enforce this agreement. In the interests of justice and noting that purpose of equitable tolling is "to put the Plaintiffs in the same position in which they would have been had the delays not occurred," Plaintiff's claims will be tolled as of the date of their filing of the instant motion such that the collectives will include individuals employed by Defendants between

November 11, 2018, and April 19, 2022. *See Penley v. NPC Int'l, Inc.,* 206 F. Supp. 3d 1341, 1351 (W.D. Tenn. 2016). As such, this Court **GRANTS** Plaintiff's Motion for Conditional Certification.

Defendants are not left without recourse by this Court's grant of conditional certification. If discovery reveals that the class should be limited to a subset of the employees who work only at the same location that employed Plaintiff, the Court may address that issue on Defendants' motion to decertify the collective action at that time. *See Williams v. Owens & Minor, Inc.*, No. 09-00742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) (declining to limit "the size and scope of any class until discovery is complete and the issue of final certification is before the Court"); *Potoski v. Wyo. Valley Health Care Sys.*, No. 3:11-cv-582, 2013 WL 6731035, at *8 (M.D. Pa. Dec. 19, 2013).

### B. NOTICE ISSUES

Plaintiff submitted her proposed notice documents as exhibits attached to their Motion. (*See* ECF Nos. 24-11, 24-12, 24-13). These documents include the following: Notice of Lawsuit for Unpaid Wages (the "Notice Form") (ECF No. 24-11), Proposed Email Notice (ECF No. 24-12), and Proposed Reminder Postcard (ECF No. 24-13). Having conditionally certified the proposed collective classes, this Court has the authority to supervise notice to potential plaintiffs. *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio 2011) (Marbley, J.) (citing *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 172 (1989) ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.")). The parties argue several issues relating to Plaintiff's request to provide notice to putative collective members: the manner of providing notice, the proposed website, the length of the opt-in period, production of information, and the content to be used in the proposed notice documents. This Court addresses these issues in turn.

13

*1. Manner of Providing Notice*

Plaintiff's Motion first requests that this Court authorize Plaintiff to provide notice to putative collective members via first-class mail, email, and reminder notices to be sent halfway through the notice period. Plaintiff justifies the reminder request by noting that collective action notices are often disregarded, that there is a high turnover rate among restaurant employees, and that courts often approve reminder notices, particularly where in industries involving high turnover rates. (ECF No. 18 at 20) (citing *Hamm*, 275 F. Supp. 3d at 879). Defendants do not submit any argument opposing Plaintiff's request.

Typically, courts "approve only a single method for notification unless there is a reason to believe that method is ineffective." *Hamm*, 275 F. Supp. 3d at 879. This Court, following the trend in the Southern District of Ohio, tends to allow both mail and email notices to be sent to putative class members. *Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-CV-1110, 2019 WL 101905, at *4 (S.D. Ohio Jan. 4, 2019) (Marbley, J.) (quoting *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899–900 (S.D. Ohio 2018)). Allowing Plaintiff to reach putative plaintiffs by both email and first-class mail would "likely obviate the need to resend notice if an employee's home address is inaccurate," *Hall*, 299 F.Supp.3d at 899, sure to be a concern given Plaintiff's representation that the restaurant industry contains a high staff turnover rate.

While courts have discretion in approving reminder notices, this Court must be careful to avoid the appearance of encouraging individuals to join the lawsuit. *See Godsey v. Airstream, Inc.,* No. 3:19-cv-107, 2020 WL 502550, at *5 (S.D. Ohio Jan. 31, 2020); *Wells v. Cmty. Health Sys., Inc.,* No. 3:21-CV-00865, 2022 WL 4377116, at *6 (M.D. Tenn. Sept. 22, 2022). As a fellow court in this district has previously noted, "[m]any courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and

encouraging participation." *Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-CV-1225, 2019 WL 4667497, at *13 (S.D. Ohio Sept. 25, 2019) (quoting *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012)).

Weighing these concerns against the observation that the FLSA is a remedial statute, the court in *Wells* ordered the following:

> [A]ny reminder notice shall plainly state that the Court is not weighing in on the propriety of joining the suit or not, and shall state: "The Court takes no position regarding the merits of the claims or defenses at issue in this case. Whether to join this case is an individual decision and this reminder shall not be read as the Court encouraging or discouraging anyone from joining this lawsuit."

*Wells*, 2022 WL 4377116, at *6.

Being persuaded by the *Wells* court's approach, this Court will order likewise with respect to the reminder notices. Noting the foregoing considerations and Defendants' lack of objection, this Court **GRANTS** Plaintiff's request to provide notice via first-class mail, email, and reminder notices to be sent halfway through the notice period. The reminder notices, however, must state the following: "The Court takes no position regarding the merits of the claims or defenses at issue in this case. Whether to join this case is an individual decision and this reminder shall not be read as the Court encouraging or discouraging anyone from joining this lawsuit." *Id*.

### 2. Proposed Website

Plaintiff also requests leave to maintain a website dedicated to posting the content contained in the Notice and Consent Form (the "consent form"). (ECF No. 24-11). The proposed website would also enable individuals to sign electronically the consent form through an electronic portal. Plaintiff represents that the proposed online portal-website would use a URL address separate from Plaintiff's attorneys' website and be limited to the content contained in the Court-approved consent form. Plaintiff argues that this Court previously approved a proposed notice

15

containing similar language. (ECF No. 47 at 9) (citing *Myers*, 201 F.Supp.3d at 884). Defendants argue that Plaintiff improperly requests permission to direct recipients to review materials on the Plaintiff's attorneys' website without giving the Court an opportunity first to consider the website's language.

This Court credits Plaintiff's representations that the proposed website would have a separate URL address and would limit its content to the information contained in the Court-approved consent form. This Court thus **GRANTS** Plaintiff leave to maintain the website in strict accordance with those representations.

3. 90-Day Opt-In Period

Plaintiff next requests that this Court allow her opt-in notice to putative class members to remain active for a period of 90 days. Plaintiff argues that courts often grant plaintiffs a 90-day notice period in FLSA lawsuits, given the difficulty of locating employees. Plaintiff also contends that the high turnover rate of the restaurant industry weighs in favor of granting a longer notice period. Defendants contend that several courts in this district have found 90-day opt-in periods excessive in their cases; as such, a 90-day opt-in period would be excessive in this case.

As fellow courts in this district have acknowledged, "[t]here is no hard and fast tule controlling the length of FLSA notice periods." *Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2021 WL 2659955, at *7 (S.D. Ohio June 29, 2021) (quoting *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016)). This Court has repeatedly noted that 90 days is a standard notice period and granted it accordingly. *See, e.g., Smith v. Generations Healthcare Servs. LLC,* No. 2:16-CV-807, 2017 WL 2957741, at *7 (S.D. Ohio July 11, 2017) (Marbley, J.); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017) (Marbley, J.).

This Court has readily granted a 90-day notice period where, as here, Plaintiff credibly anticipates difficulties in locating all potential class members. *See Conklin*, 2017 WL 3437564, at *6. Defendants merely cite to cases in which other courts, on the facts before them, found a 90-day opt-in period excessive. Defendants do not, however, provide any argument concerning why a 90-day opt-in period would be excessive in *this* case. Defendants' contention that the 90-day opt-in period is not warranted in this case is belied by this Court's observations from the record before it. The difficulties that Plaintiff may have in locating the putative collective members, especially considering that the claims involve several restaurant locations and Plaintiff's contention regarding the restaurant industry's high turnover rate, weighs in favor of a longer notice period. Thus, this Court **GRANTS** Plaintiff's request for a 90-day opt-in period.

4. *Production of Information*

Plaintiff next requests that this Court order Defendants to identify all putative collective members within fourteen (14) days of entry of the order by providing in an Excel spreadsheet: full names, last known addresses, phone numbers, e-mail address(es), dates of employment, location(s) worked, and position(s) held. As basis for Plaintiff's request, she cites to another case in which this Court has ordered Defendants to do the same. (ECF No. 24 at 22) (citing *Hawkins v. Extended Life HomeCare Ltd.*, No. 2:18-CV-344, 2019 WL 952737 (S.D. Ohio Feb. 27, 2019) (Marbley, J.)).

Defendants do not submit any objections to this term. Thus, this Court **ORDERS** Defendants to produce the requested information to Plaintiff within fourteen (14) days of this Opinion and Order. *See Myres,* 2021 WL 2659955, at *6.

*5. Content of the Proposed Notice Documents*

Plaintiff submits the following proposed notice documents for this Court's review and approval: Notice of Lawsuit for Unpaid Wages (ECF No. 24-11), Proposed Email Notice (ECF No. 24-12), and Proposed Reminder Postcard (ECF No. 24-13).

Defendants argue that the proposed notice documents are inappropriate. Defendants argue that, if this Court is inclined to permit Plaintiff to use the documents, it should adopt Defendants' "preliminary proposed modifications" to the documents. Defendants' "generalized" proposed modifications are as follows: (1) replacing the "BWW" acronym used in the documents with the full franchise name because the acronym could be confusing and encourage opt-in forms from unrelated restaurants; (2) adding more references throughout the documents that the claims at issue are alleged in each part of the notice discussing the nature of the claims; (3) adding more references to the notice making it more clear that Plaintiff's complaint seeks recovery under OWA in addition to FLSA; (4) providing more details or attaching a copy of the Representation Agreement that Plaintiff signed with the law firms that is referenced in the Proposed Consent to Join Form (ECF No. 24-11 at 4). Defendants also submit a number of "specific" proposed modifications: (1) that Plaintiff modifies the Proposed Reminder Postcard to the extent it suggests that the Court has approved the website language; (2) that Plaintiff removes the language from the Notice Form stating that "[t]his is . . . not a solicitation from a lawyer" because it actually is a solicitation from a lawyer; (3) that Plaintiff modifies section six of the Notice Form so that it directs potential opt-in members to the court docket and the Complaint rather than merely directing them to Plaintiff's counsel; (4) that Plaintiff adds to the Notice Form the information that an opt-in Plaintiff has the right to retain separate counsel; and (5) that Plaintiff remove the non-retaliation clause in section

four of the Notice Form because it inappropriately casts Defendants in a negative light with its current employees.

Plaintiff responds to Defendants' "generalized" proposed modifications as follows: (1) does not address Defendants' acronym request; (2) language referencing Plaintiff's claims as "disputed" or "alleged" is already included in the proposed notice form; (3) does not oppose adding more language indicating that if the putative collective member worked in Ohio, that the claims in the lawsuit also seek relief under the OWA; (4) the Proposed Consent to Join Form also states that parties can obtain a copy of the Representation Agreement by requesting it from the law firm and is thus sufficient. Concerning Defendants' "specific" proposed modifications, Plaintiff responds: (1) & (2) agrees to add to the line "This is a Court-Authorized Notice, Not a Solicitation from a Lawyer" that "The Court Has Made No Findings on the merits of the Case at this Time"; (3) does not oppose Defendant's proposal to direct putative collective members to the court docket and Complaint for additional information; (4) the proposed notice form already has language informing a putative collective member of his/her right to retain separate counsel; and (5) argues that courts in this circuit routinely allow retaliation provisions but that Plaintiff nonetheless agrees to include Defendants' proposed language that "Defendants seeks to assure its employees that it respects any decision they make and commits to nonretaliation" to the end of the retaliation clause in the Notice Form.

Having reviewed Defendants' objections, this Court hereby **ORDERS** Plaintiff to submit to this Court a revised set of proposed notice documents which do the following:

1. Replace the "BWW" acronym used throughout the proposed notice documents with the full franchise name;

2. Add language to the Proposed Email Notice noting that the claims at issue are alleged;

3. Add language to the proposed notice documents indicating that if the putative collective member worked in Ohio, that the claims in the lawsuit also seek relief under the OWA;

4. Attach a copy of the Representation Agreement to the Proposed Consent to Join Form;

5. Add to the header of the Notice Form, under the line stating "This is a Court-Authorized Notice, Not a Solicitation from a Lawyer," the following: "The Court Has Made No Findings on the Merits of the Case at this Time";

6. Insert additional references throughout the Notice Form to opt-in plaintiffs' right to retain separate counsel; and

7. Add Defendants' proposed language that "Defendants seek to assure its employees that it respects any decision they make and commits to nonretaliation" to the end of the retaliation clause in the Notice Form.

Plaintiff is **ORDERED** to produce to this Court for approval a revised set of proposed notice documents consistent with these instructions within fourteen (14) days of this Opinion and Order.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Plaintiff's Motion for Conditional Certification (ECF No. 24), subject to the conditions of this Opinion and Order.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　**ALGENON L. MARBLEY**
　　　　　　　　　　　　　　　　　　　　　**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 13, 2023**