# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **KAYLA PENDER,** *individually and on behalf of all others similarly situated,* : : : | |
| Plaintiff, : : | |
| v. : : | Case No. 2:21-cv-04292 |
| **FLYING S. WINGS, INC.,** *et al.,* : *d/b/a* **Buffalo Wild Wings,** : : | Chief Judge Algenon L. Marbley |
| Defendants. : | Magistrate Judge Kimberly A. Jolson |

## ORDER

This matter is before this Court on Plaintiff Kayla Pender's Motion for Prejudgment Attachment of Defendant's Real Property and Assets (ECF No. 84). For the reasons explained below, Plaintiff's Motion (ECF No. 84) is **DENIED**.

### I.  BACKGROUND

Plaintiff Kayla Pender ("Plaintiff") brought suit on behalf of what is now 70 opt-in Plaintiffs (collectively, "Plaintiffs") to seek redress for what she alleges is wage and hour wrongdoings by Plaintiffs' former employer, Flying S. Wings, Inc., Flying Buffalo, Inc., Chase & Green Corp., Scott Lloyd, and Stephen Green, collectively doing business as Buffalo Wild Wings ("Defendants"). (ECF No. 1 at 1–2). In Plaintiff's view, Defendants have continually paid their employees—including Plaintiffs—a subminimum wage in violation of the Ohio Constitution, Ohio Wage Act, and Fair Labor Standards Act ("FLSA") by way of failing to comply with FLSA's tip-credit provisions, whereby an employee "us[es] a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee" (*Id.* at 2). Plaintiff alleges Defendants

1

also required them to purchase out-of-pocket tools and items necessary for the job, such as pens and uniforms, and did not properly pay and/or account for Plaintiffs' non-tipped work. (*Id.*).

Plaintiff sought class certification on behalf of two classes: one for servers and bartenders in Defendants' Buffalo Wild Wings Ohio and West Virginia franchises, and one for servers and bartenders at any of Defendants' restaurants in Ohio. (ECF No. 24 at 1). Shortly thereafter, Plaintiff filed an amended complaint (ECF No. 42), which Defendants answered, putting forth their affirmative defenses (ECF No. 45). After the parties completed class certification briefing (ECF Nos. 46, 47), this Court held a class certification hearing (ECF Nos. 49, 50). This Court then granted conditional certification (ECF No. 51), and the parties began the notice process to solicit opt-in plaintiffs (ECF Nos. 52, 53, 55–66, 69– 72). Discovery also kicked off and, as it became clear that discovery would involve substantial resources, the parties agreed to mediate, so the case was stayed in March of this year. (ECF Nos. 82, 83).

But mediation was ultimately unsuccessful, so the parties asked this Court to lift the stay and continue with discovery. (ECF Nos. 85, 86). And in light of the unsuccessful attempt at resolution, Plaintiff, on behalf of herself and the Opt-In Plaintiffs, sought prejudgment attachment of Defendants' property at issue here today (ECF No. 84). In response, Defendants requested a hearing on and opposed Plaintiff's Motion. (ECF Nos. 87, 91). This Court held a hearing on Plaintiff's Motion on August 16, 2024 ("Motion Hearing") (ECF No. 89), and this Motion is now ripe for this Court's review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 64(a) broadly provides that a plaintiff has access to "every remedy [] available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." While federal statutes

govern "to the extent [one] applies," Fed. R. Civ. P. 64(a), no such federal statute exists for prejudgment attachment, so Ohio law governs. *Data Processing Scis. Corp. v. Lumenate Techs., LP*, No. 1:16-cv-291, 2016 WL 3144117, at *2 (S.D. Ohio 2016) (quoting *Nationwide Mut. Ins. Co. v. Whiteford Sys., Inc.*, 787 F. Supp. 766, 768 (S.D. Ohio 1992)).

Under Ohio law, "[a] plaintiff in an action for the recovery of money … may apply to the court by written motion for the attachment of property, other than personal earnings, of the defendant." Ohio Rev. Code § 2715.03. As a threshold matter, a plaintiff must submit with its motion for prejudgment attachment an affidavit from the plaintiff or her agent or attorney detailing: (1) "[t]he nature and amount of the claim"; (2) "[t]he facts that support at least one ground for an attachment contained in § 2715.01"; (3) "[a] description of the property sought and its approximate value, if known"; (4) "the location of the property"; and (5) "[t]o the best of plaintiff's knowledge, … the use to which the defendant has put the property and that the property is not exempt from attachment or execution." *Id.* "Only upon determining that Plaintiff has satisfied these requirements may the Court consider the actual motion for attachment." *Hook v. Baker*, No. 2:02-cv-901, 2004 WL 3113716, at *3 (S.D. Ohio Sept. 7, 2004) (citing *Nationwide Mut. Ins. Co.*, 787 F. Supp. at 768).

To then succeed on the merits of a motion for prejudgment attachment, a plaintiff must establish both "grounds of attachment" and "probable cause." Ohio law allows for attachment in eleven situations based on a plaintiff's claims or a defendant's conduct, known as "grounds of attachment." Ohio Rev. Code § 2715.01. And a showing of "probable cause" requires the court to find, by way of paper submissions and the evidence presented at the hearing, if applicable, that it is "likely" that the plaintiff "will obtain a judgment against the defendant … that entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the

3

motion." *Id.* §§ 2715.043(B), 2715.011(A); *Miller v. Food Concepts Int'l, LP*, No. 2:13-cv-124, 2015 WL 12672728, at *2 (S.D. Ohio 2015).

Ohio law further establishes that a plaintiff who seeks prejudgment attachment and receives such an order from the court may be required to post bond to the defendant against whom the motion was filed. Ohio Rev. Code § 2715.044. If the plaintiff is indigent, however, the court has discretion, guided by fairness, to waive or lower the bond requirement. *Id.*

### III. LAW & ANALYSIS

Defendants oppose prejudgment attachment on three main grounds, arguing that: (1) despite a second bite at the apple, Plaintiff has still failed to submit a statutorily compliant affidavit; (2) Plaintiff has not established probable cause such that it is "likely" that she will obtain a judgment in her favor; and (3) Plaintiff does not demonstrate grounds for attachment. This Court takes these in turn, and then addresses two other relevant issues: (1) jurisdiction; and (2) the bond requirement.

#### A. Statutorily Required Affidavit

As both parties acknowledge, a plaintiff must file an affidavit including certain information along with her motion. *See* Ohio Rev. Code. § 2715.03. But as this Court explained in its August 13, 2024 Order, Plaintiff's Motion did not include an affidavit. (ECF No. 92). And "[w]hile Plaintiff incorporates by reference declarations from Plaintiff and another of Defendant[s'] former employees, neither declaration cures the statutory deficiency, as neither includes all of the information required by Ohio Revised Code § 2713.03." (*Id.* (citing ECF No. 84 at 1 n.1)). In this jurisdiction, courts typically require strict adherence to certain prejudgment attachment procedural requirements, such as the filing of this affidavit. *See, e.g.*, *Hook*, 2004 WL 3113716, at *3 ("The named plaintiffs failed to attach an affidavit with the requisite information. Consequently, the

4

Court DENIES the named plaintiffs' motion."); *Selectronics, Inc. v. Millennia Grp., Inc.*, No. 1:08-cv-1149, 2009 WL 10689608, at *2 (N.D. Ohio Oct. 30, 2009) ("Because Selectronics has not filed the required praecipe, this court must deny its motion for attachment and garnishment."). As such, this Court provided Plaintiff an additional opportunity to file a statutory compliant affidavit prior to the hearing on her Motion, warning that, otherwise, "her Motion (ECF No. 84) is subject to dismissal." (ECF No. 92).

Plaintiff then submitted an Affidavit by counsel, Robert DeRose, explaining that: (1) Plaintiff seeks both state and federal relief for Defendants' alleged wage and hour violations; (2) the class of "Plaintiffs' claims are currently valued at $3,000,000.00" based on payroll data and attorneys' fees; (3) prejudgment attachment is appropriate as Plaintiff's claims are for "work or labor" and because Defendants are "about to convert" the property Plaintiff seeks; and (4) Plaintiff seeks a host of property owned by the Defendants collectively or the Individual Defendants, and states where such property is located. (ECF No. 93). The Affidavit's failure to provide an approximate value of the property sought to be attached alone is not fatal, as an affidavit nonetheless complies with the property value requirement if the value is not known. *See* Ohio Rev. Code § 2715.03(C). Plaintiff does not explicitly state in the Affidavit that such value is unknown, but: (1) Plaintiff clarified as much as the Motion Hearing; and (2) this Court is not aware of any cases requiring as much. Plaintiff's Affidavit, therefore, generally satisfies the statutory requirements.

But Plaintiff's Affidavit is not perfect. The Affidavit describes the property to be attached at an extremely high-level, referring to categories of property such as "appliances, furniture, vehicles, [and] tools" without defining what these could possibly be so that this Court can determine if attachment of that property is proper, let alone estimate the value of the property to

5

be attached. (*See, e.g.*, ECF No. 93 at 3). Additionally, the Affidavit does not include "the use to which the defendant has put the property," or an explanation as to why Plaintiff's reasonable investigation of as much did not reveal the use. *See* Ohio Rev. Code § 2715.03(E). Nor does Plaintiff's Affidavit expound on how or whether "the property is not exempt from attachment or execution." *Id.* On these points, at the Motion Hearing, Plaintiff explained that, in not including this information, it relied on the statute's "[t]o the best of the plaintiff's knowledge[] after reasonable investigation" carve out. *Id.* In so doing, Plaintiff appears to have interpreted Defendants' poor financial condition as evidence that Defendants are about to use or have already used the money allegedly owed to Plaintiffs in an attempt to save their businesses. Plaintiff also used this carve out to imply that, in Plaintiff's best guess, the property sought to be attached is not exempt from attachment. But this Court does not understand why such information could not have been set forth in Plaintiff's Affidavit. This carve out does not, in this Court's view, provide a basis for not including relevant information should a plaintiff have it; rather, it allows a plaintiff to supply less-than-precise information as an acknowledgement that a plaintiff cannot be expected to have information equality as to a defendant's actions or the ins-and-outs of a defendant's property status.

Many of Defendants' issues with Plaintiff's Affidavit do not fare well. At the outset, this Court disagrees that Plaintiff's "Affidavit does not comply with the personal knowledge requirement under either Ohio or Federal law." (ECF No. 94 at 2). Based on this Court's review of Plaintiff's Affidavit, Mr. DeRose can reasonably be said to have personal knowledge of the contents. For example, Mr. DeRose includes the caveat that "Plaintiffs allege" and "Plaintiffs believe" some of the information instead of stating it directly, and he does indeed have personal knowledge that Plaintiffs believe or allege those things. (*See, e.g.*, ECF No. 93 at 1–2). Further,

6

none of Defendants' case law requires that the affidavit in a prejudgment attachment be from someone who has personal knowledge of all of the circumstances around Plaintiff's request. (*See* ECF No. 94 at 2–3).

As a broader point, Plaintiff's Affidavit need not contain all of the information necessary to secure prejudgment attachment, so long as it complies with the statutory requirements. *See* Ohio Rev. Code § 2715.03. For this reason, the *Affidavit* need not "provide[] … grounds or facts why the Individual Defendants can be held liable for the alleged violations" or "demonstrate or put forth any facts showing that a judgment is 'likely' or that this case is susceptible to class-wide resolution"; the *Motion* can do so. (*See* ECF No. 94 at 6).

Additionally, there is not a per se problem with Plaintiff seeking "attachment of virtually all of Defendants' real and personal property" such that "[t]he breadth and scope of the property sought to be attached is alarming and astonishing" to Defendants. (ECF No. 94 at 3). If sufficiently described and necessary to secure funds for a potential money judgment in plaintiff's favor, these grounds alone do not raise concern. And as to Plaintiff's requests for attachment of property outside of Ohio, this is a jurisdictional issue—not an affidavit compliance issue—which this Court addresses in detail below. (*See* ECF No. 94 at 4).

Thus, the question remains whether *this* Affidavit is sufficient. Certainly, courts have refused to consider the merits of prejudgment attachment requests for failure to comply with the state law procedural requirements. (*See* ECF No. 91 at 7–8 (collecting cases)). But most of these failures were complete, such as failing to include an affidavit or praecipe at all—as Plaintiff did originally but then cured—or it was unclear from the record what was missing, which is not helpful to this Court today. *See, e.g.*, Browning v. University of Findlay, No. 3:15-cv-2687, 2019 WL 582351, at *2 (N.D. Ohio Feb. 13, 2019) (denying motion for failure to file a praecipe);

7

*Selectronics, Inc.*, 2009 WL 10689608, at *2 (same); *Zeeb Holdings, LLC v. Johnson*, 552 F. Supp. 3d 709, 712 (N.D. Ohio 2021) (same); *Buemi v. Ohio Insulation and Acoustics*, No. 68460, 1995 WL 558907, at *2 (Ohio Ct. App. Sept. 21, 1995) (court did not include the procedural shortcoming); *Hook*, 2004 WL 3113716, at *3 (failing to attach an affidavit). *But see Tyler v. Sento Corp.*, No. 5:08-cv-1047, 2008 WL 11383294, at *1–2 (N.D. Ohio Oct. 2, 2008) (denying for incompleteness of affidavit). And the Sixth Circuit has long held that "the Ohio statutes of attachment are to be construed liberally for the benefit of the attaching party." *Nw. Yeast Co. v. Broutin*, 133 F.2d 628, 630 (6th Cir. 1943) (citing *Smith v. Buck*, 119 Ohio St. 101, 109, 162 N.E. 382, 61 A.L.R. 1343; *Weirick v. Mansfield Lumber Co.*, 96 Ohio St. 386, 117 N.E. 362; *Bridge v. Ring*, 25 Ohio App. 149, 157 N.E. 496). Be that as it may, even assuming *arguendo* that Plaintiff's affidavit is procedurally sound, Plaintiff's motion nonetheless falls short of demonstrating that prejudgment attachment is proper at this time.

### B. Grounds for Prejudgment Attachment

Plaintiff asserts two grounds upon which she believes prejudgment attachment is appropriate: (1) "[t]hat the claim is for work or labor," Ohio Rev. Code § 2715.01(11); and (2) that "the defendant is about to convert property, in whole or part, into money for the purpose of placing it beyond the reach of creditors," *id.* § 2715.01(7). (*See* ECF No. 84 at 6–9). Defendant disputes the latter of these, but is silent as to the former. (ECF No. 91 at 15–16).

*1. Whether Plaintiff's Claims are for "Work or Labor"*

In support of her assertions that her claims are for "work or labor," Plaintiff explains that "the services they performed for Defendants were subject to Defendants' direction and control and were not primarily mental," nor did they "involve the exercise of professional judgment to the

8

level contemplated by" the statute. (ECF No. 84 at 7). These services, she explains, include "primarily physical tasks done for the purpose of supporting restaurant operations." (*Id.* at 8).

Under Ohio's prejudgment-attachment statute, "[t]he term 'work' embraces the services rendered by the laborer, operative, and artisan in the production of wealth as distinguished from those whose exertion is primarily and almost entirely mental." *Hatmaker*, 2021 WL 99346, at *3 (quoting *Corbett v. Moderalli*, No. 77 C.A. 123, 1978 WL 214903, at *1 (Ohio App. 1978)). In this way, courts have disaggregated the activities done by attorneys, physicians, and other professionals engaging in "professional activities" from the type of work contemplated by Plaintiffs. *Id.* (citing *Papouras v. The M. J. Kelley Co.*, No. 35145, 1976 WL 191093, at *1 (Ohio App. 1976)). Given the mostly physical activities performed by Plaintiffs as servers and bartenders for Defendants, Plaintiffs are a far cry from an executive or manager. *See Henry v. Mangold*, 81 N.E.2d 342, 344 (1947). Instead, Plaintiffs performed "work" within the meaning of the relevant statute, so Plaintiff has alleged grounds for prejudgment attachment. *See* § 2715.01(A)(11).

### 2. Whether Defendants are "About to Covert" the Property at Issue

Having determined that Plaintiff sufficiently alleged that her claims are for "work or labor," this Court need not consider other grounds for attachment. But as the parties fully briefed the "about to convert" ground, this Court reviews it nonetheless. In Plaintiff's view, Defendants "unlawfully withheld and distributed" Plaintiffs' tips for "us[e] … for Defendants' own reasons," which "resulted in Defendants' financial gain at the Plaintiffs' expense." (ECF No. 84 at 9). In response, Defendants explain, among other things, that they "dispute Plaintiffs' claim and all liability" so "[i]t makes no sense that Plaintiff can satisfy O.R.C. § 2715.01(7) by pointing to the very conduct that is disputed and that Plaintiff must prove." (ECF No. 91 at 15).

9

Plaintiff's assertions here are akin to those in *Enable Healthcare, Inc. v. Cleveland Quality Healthnet, LLC*, No. 1:16-cv-2395, 2016 WL 6821980 (N.D. Ohio Nov. 18, 2016).  There, the plaintiff's only argument in support of the "about to convert" prong was that "'[o]n information and belief, when Defendant receives the … Payments, it will convert that property into money payments to each of its member physician practices, thereby placing it beyond the reach of Plaintiffs." *Id.* at *2.  But the court rejected that argument, explaining that the plaintiff "provides no facts that would support his conclusory statement," as "he does not even aver that defendant would convert the … Payment into money *for the purpose of* placing it beyond the reach of plaintiff." *Id.*  The court also added that "Plaintiff cites no evidence that defendant has taken any action in an effort to avoid satisfying a judgment … and there is no evidence that they would be beyond the reach of plaintiff." *Id.*

The same is true here.  This Court agrees that, at least in this context, "one is presumed to intend the natural and probable consequences of his voluntary acts."  *Hennon v. Hennon*, 21 O.O.2d 18, 186 N.E.2d 509 (C.P. 1960) (interpreting the "about to convert" attachment ground). But, as this Court explains below, Plaintiff has not, at this time, provided sufficient information to show that Defendants' wrongdoings are "likely."  Plaintiff has therefore not established the "voluntary acts" from which Defendants could be presumed to intend any consequences.  In this Court's view, without certainty of Defendants' acts—that is, without some level of certainty that Defendants did, in fact, convert Plaintiff's tips into their own profits—this Court cannot agree that such acts were "for the purpose of" anything.  So, Plaintiff has not met her burden as to the "about to covert" ground.

### C. Probable Cause

Whether Plaintiff has shown probable cause turns on how she presents the substance of her underlying claims at this point, as probable cause exists only if it is "likely that [the plaintiff] will obtain judgment against the defendant ... that entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion." Ohio Rev. Code § 2715.011(A). Plaintiff argues that as a result of "Defendants' practices of paying subminimum wages[,] … requiring them to incur work-related expenses, and engag[ing] in substantial amounts of … non-tipped work," "Defendants' violations of [the Ohio Wage Act and FLSA] are per se and uncontestable," so she is "more than likely to obtain a judgment against Defendants on these claims." (ECF No. 84 at 10–11).

Defendants disagree, claiming that instead of "provid[ing] facts to support her heavy burden, … Plaintiff merely summarizes the claims she asserts against Defendants[.]" (ECF No. 91 at 9). Defendants point to the parties' conflicting evidence and Defendants' denial of wrongdoing as evidence "that it is 'far from clear' that 'plaintiffs will prevail on their underlying claims.'" (*Id.* at 10 (citing *Zeeb Holdings, LLC*, 552 F. Supp. 3d at 714)). Defendants also submit that, for a separate and distinct reason, Plaintiff has not demonstrated probable cause against the Individual Defendants, as, in their view, "Plaintiff offers no facts or argument that these individuals satisfy any test for determining whether they can be held liable for the alleged violations." (*Id.* at 11) (citing *United States DOL v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1995)).

Each party submitted evidence in support of their respective positions, which alone distinguishes this case from *Miller*, wherein the "Plaintiffs' motion set[] forth no facts or evidence demonstrating probable cause; nor did Plaintiff adduce any such facts or evidence at the … hearing on this issue" such that "[t]he Court … has nothing before it on which to base a [probable cause]

11

determination[.]" 2015 WL 12672728, at *4.  With her Motion to Certify Class, Plaintiff submitted declarations from herself and another of Defendants' former employees stating that Defendants "paid [them] a subminimum hourly wage," used improper tip pooling practices, assigned their duties such that "more than 20% of [their] time" was spent on "non-tipped duties," and forced them to "purchase various items and incur expenses to perform their jobs."  (ECF Nos. 24-1, 24-2)).  These, Plaintiff asserts, constitute state and FLSA violating practices, and resulted in a "combined thousands of hours of uncompensated work[.]"  (ECF No. 84 at 9).  In Plaintiff's view, the trump card is that "[t]he Defendants have acknowledged" their allegedly improper pay practices.  (ECF No. 84 at 10–11).

In contrast, Defendants procured Plaintiff's records to demonstrate that, as an example, she was paid "almost three times the minimum wage," and described the policies in place intended to prevent the wage and hour violations Plaintiff alleges.  (ECF No. 91 at 3–5).  These policies include, among others:  (1) instructing employes to "clock in under a 'meeting' designation when performing non-tipped work" so that they "are paid a minimum wage for that time"; (2) providing "all tips … directly to the employee that earned the tips"; and (3) providing employees with the "tools or supplies to perform their work[.]"  (*Id.*).

If Defendants actually conceded wrongdoing, this would certainly be strong evidence of Defendants' liability in a way relevant to whether this Court thinks a judgment will be entered against them.  *See Hatmaker v. Papa John's Ohio LLC*, No. 3:17-cv-00146, 2021 WL 99346, at *5–6 (S.D. Ohio Jan. 12, 2021), *report and recommendation adopted*, No. 3:17-cv-00146, 2021 WL 849309 (S.D. Ohio Feb. 2, 2021) (discussing the impact of defendants' admissions regarding FLSA liability).  But Plaintiff appears to have stretched this admission too far because, just as was the case in *Hatmaker*, here, "Defendants counter that their … responses do not contain the

admissions Plaintiff[] describe." *Id.* at *5. Indeed, Defendants unambiguously "dispute Plaintiff's allegations and all wrongdoing." (ECF No. 91 at 10). In the opinion of this Court, this constitutes the "conflicting evidence" as to Defendants' alleged wage and labor violations contemplated in *Zeeb Holdings, LLC.*, 552 F. Supp. 3d at 714.

This Court does not hold that contested evidence on its own amounts to a lack of probable cause, nor that unchallenged evidence necessitates a finding in the movant's favor. (*See Student Res. Ctr., LLC v. Eastern Gateway Cmty. Coll.*, 2:22-cv-02653, ECF No. 145 at 12 (distinguishing *Zeeb Holdings, LLC.*, 552 F. Supp. 3d at 709)). But the strength of the opposing party's argument and evidence that they did not, in fact, commit the wrongs being alleged unequivocally bears on whether it is "likely" that a plaintiff "will obtain a judgment against the defendant … that entitles the plaintiff to a money judgment that can be satisfied out of the property that is the subject of the motion." Ohio Rev. Code §§ 2715.043(B), 2715.011(A). And based on the evidence in front of this Court at this time, it is simply not "likely" that Plaintiff will obtain a judgment against Defendants. Said differently, based on the evidence in front of this Court today, Plaintiff falls short of her probable cause burden.

By way of example, compare this controverted evidence to that found to be sufficient to establish probable cause in *Bd. of Trustees of Cleveland Asbestos Workers Pension Fund v. Berry Pipe & Equip. Insulation Co.*, No. 1:08-01082-JG, 2008 WL 4646064 (N.D. Ohio Oct. 17, 2008). There, the plaintiffs submitted an "uncontradicted affidavit" that the defendants created a new company and began hiring their old employees at this new company in order to "maintain [their] customer base and remain in business, yet avoid the obligations [they] owe[ ] to Third-Party Plaintiffs." *Id.* at *2. Due to this credible threat that the "[d]efendants 'ha[ve] assigned, removed,

13

disposed of, or [are] about to dispose of, property, in whole or part, with the intent to defraud creditors,'" the court held that prejudgment attachment was appropriate. *Id.* at *2–3.

But here, instead of providing similarly persuasive evidence, "Plaintiffs' [sic] incorrectly see conclusively factual findings where none presently exist." *Hatmaker*, 2021 WL 99346, at *6. And it bears mentioning that Plaintiff provides no authority for her position that her circumstances render it "likely" that she will obtain a judgment in her favor. This Court cannot accept Plaintiff's argument based only on vigorously disputed declarations. *See Connecticut v. Doehr*, 501 U.S. 1, 14 (1991) (rejecting a state statute that allowed for prejudgment attach of real estate based on "one-sided, self-serving, and conclusory submissions" that there was probable cause to support the validity of the party's claims). So, "[a]t this stage, [Plaintiff]'s theories are simply too tenuous and lacking legal support for this Court to find that [Plaintiff] is likely to obtain a judgment against [Defendants]." *PCA-Corr., LLC v. Akron Healthcare LLC*, No. 1:20-cv-428, 2021 WL 1582984, at *5 (S.D. Ohio Apr. 22, 2021).

As discussed during the Motion Hearing, this Court agreed with Plaintiff's view of the case in the class certification context, holding "that Plaintiff has met her burden of setting forth a 'modest factual showing that [she] is similarly situated to the other employees [she] is seeking to notify.'" (ECF No. 51 at 10 (citing *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1043 (S.D. Ohio 2018)). Put differently, this Court found that if Defendants indeed committed the alleged wrongdoings, Plaintiff and the class she seeks to represent would likely be similarly situated as to those wrongdoings. (*Id.* at 10–12). Today's ruling does not change this view, but it means that the record before this Court does not establish that Plaintiff is "likely" to obtain a judgment in the class's favor as to these alleged wrongdoings in the way required for prejudgment attachment. But nothing in this finding should be taken as an indication of how this Court will substantively decide

14

Plaintiff's case; the outcome of this Court's probable cause analysis does not weigh in on "the ultimate merits of Plaintiff[']s[] FLSA claims." *Hatmaker*, 2021 WL 99346, at *5.

### D. Other Issues

While consideration of any other issues is unnecessary given this Court's substantive findings, this Court concludes by addressing two final issues: (1) whether this Court has jurisdiction over Defendants' property; and (2) whether Plaintiff would be obligated to post a bond.

*1. Jurisdiction over Property*

Neither party appears to have raised the question of jurisdiction in their in initial briefs, but Defendants argue that "the Affidavit improperly seeks attachment for property located in 'Parkersburg, West Virginia, Moundsville, West Virginia, and Barboursville, West Virginia.'" (ECF No. 94 at 4). While Defendants do not outright lodge this as a jurisdictional challenge, they cite a case explaining that "Ohio's attachment statute does not apply to property that is located outside of Ohio." *Zeeb*, 552 F. Supp. 3d at 712 (citing *EBSCO Indus., Inc. v. Lilly*, 840 F.2d 333, 336 (6th Cir. 1988), and *Commodigy OG Vegas Holdings, LLC v. ADM Labs*, No. 1:19-cv-01382, 2019 WL 6716457, at *2 (N.D. Ohio)). As applied in *Zeeb*, the court concluded that "[b]ecause the … plaintiffs have the burden of showing that they are entitled to attach the requested property, they have the burden of showing that the property is located in Ohio," but that "they have not satisfied this burden." *Id.* at 713. This Court has already found that prejudgment attachment is not appropriate here, but even if it found otherwise, this Court felt it worth noting that it could not exercise this power over any property "located outside of Ohio." *Id.* at 712. That said, Plaintiff amended her position during the Motion Hearing to explain that she does not seek assets in West Virginia.

*2. Bond*

A to the bond requirement, if a movant receives an order of prejudgment attachment from the court, said movant may be required to post bond to the party against whom the motion was filed. Ohio Rev. Code § 2715.044. But, as Plaintiff points out, a court "may waive the bond 'as fairness requires.'" (ECF No. 84 at 14 (quoting Ohio Rev. Code § 2715.044)). One such circumstance is indigency. *See, e.g.*, *Wilson v. D&N Masonry, Inc.*, No. 1:12-cv-922, 2013 WL 12131344, at *2 (S.D. Ohio Aug. 28, 2013) ("Plaintiff, because he is indigent, shall not be required to post any bond for this attachment order to issue.").

But in *Wilson*, the plaintiff sought and was granted leave to proceed in forma pauperis, so the court had already established his inability to pay based on the plaintiff's financial records prior to the prejudgment attachment proceedings. (*Wilson*, 1:12-cv-922, ECF Nos. 1 (motion for leave to proceed in forma pauperis), ECF No. 2 (granting of ECF No. 1)). The same is true for the bond waiver in *Clevenger v. JMC Mechanical, Inc.*, as plaintiff declared in his prejudgment attachment declaration that the subject of his lawsuit is that he "not been paid for three weeks, so [he] cannot afford to pay" the cost of litigation. (2:15-cv-2639, ECF No. 2-1 at 1–2; 2:15-cv-2639, 2015 WL 12683415, at *2 (S.D. Ohio Aug. 28, 2015) (waiving bond due to indigency)). But no such records were presented here.

It is, of course, relevant that, like in *Clevenger*, Plaintiff's action here is based on Defendants' alleged deprivation of Plaintiff's wages and/or tips. (*See* ECF No. 84 at 14). And this Court does not disagree that "it would be unreasonable and unjust to require workers to post a bond to obtain wages their employer stole through conversion." (*Id.*). But Ohio law requires a bond "in an amount twice the approximate value of the property to be attached under the order." Ohio Rev. Code § 2715.044. Here, Plaintiff seeks to attach property sufficient to pay a money

16

judgment of over $3,000,000.00 on behalf of the similarly situated workers. Assuming for purposes of this point that Defendants' property is worth that much and that Plaintiff would otherwise be entitled to prejudgment attachment, Plaintiff would be responsible for a bond of $6,000,000.00 in order to get her requested relief. Certainly, fairness might—and likely would—require the waiver or lessening of this burden. But given the state of the case law surrounding the bond requirement, it is currently appropriate for this Court to require *some* evidence of financial hardship caused by the posting of such a bond, and here, Plaintiff has provided no such evidence.

## IV. CONCLUSION

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for Prejudgment Attachment (ECF No. 84).

**IT IS SO ORDERED**.

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 22, 2024**