## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| Kayla Pender, individually and on behalf of all others similarly situated. <br><br> *Plaintiffs,* <br><br> v. <br><br> Flying S. Wings, Inc. d/b/a Buffalo Wild Wings <br><br> *Defendants.* | No. 2:21-cv-04292-ALM-KAJ <br><br><br> Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

### PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT
### OF ATTORNEYS' FEES AND COSTS

Pursuant to this Court's Order dated June 5, 2026 (ECF No. 197) following the three-day bench trial, which concluded a verdict in favor of Plaintiff Kayla Pender ("Pender") and the 53 opt-in plaintiffs ("Opt-in Plaintiffs") (collectively "Plaintiffs") against Defendant Flying S. Wings, Inc. d/b/a Buffalo Wild Wings ("Flying Wings"), Defendant Flying Buffalo, Inc. ("Flying Buffalo"), Defendant Chase & Green ("Chase and Green") (collectively "Defendants")[1]. Plaintiffs respectfully move this Court for an award of **$293,506.00** in attorneys' fees and **$29,598.60** in litigation costs in connection with a successful Judgment in this matter pursuant to Federal Rule of Civil Procedure 23(h), 29 U.S.C. § 216(b), and Ohio Revised Code § 4111.10. *See* ECF No. 197. Plaintiffs are represented by two law firms: Barkan Meizlish DeRose Cox, LLP ("BMDC") of Columbus, Ohio, and Herrmann Law, PLLC ("HLaw") of Fort Worth, Texas.

---

[1] Defendant Stephon Green and Defendant Scott Lloyd were found not to be joint employers, and no judgement was entered against them in their individual capacity.

### I. INTRODUCTION

Plaintiffs filed this collective action under the Fair Labor Standards Act 29 U.S.C. § 201 et seq, alleging that Defendants, operators of a Buffalo Wild Wings franchise, violated the tip credit, tip pool, minimum wage laws, and overtime laws. *See* ECF No 1. Specifically, Defendants unlawfully took credit against the minimum wages of tipped employees and required them to perform non-tipped work in excess of the amounts permitted by the FLSA and applicable Department of Labor guidance. *See* ECF No 1.

From the outset, Plaintiff and the opt-in Plaintiffs sought a straightforward resolution of their wage-and-hour claims against Defendants. Defendants, however, elected to litigate every aspect of this case through summary judgment, a three-day bench trial before the Honorable Algenon L. Marbley, and the resolution of more than a dozen motions. Plaintiff repeatedly attempted to resolve this matter through mediation, settlement conferences, and written demands, but Defendants rejected each overture. Having pressed this case to a successful conclusion after nearly five years of litigation, Plaintiffs' counsel is entitled to the full measure of their lodestar fees and reasonably incurred expenses.

This action was filed on behalf of Kayla Pender on behalf of herself and other similarly situated tipped employees of Defendants' restaurant operations on August 31, 2021, asserting claims under the FLSA and the Ohio wage-laws. From the earliest stages of the litigation, Plaintiff sought to resolve the claims efficiently. The parties engaged in private mediation on February 17, 2022, and held a follow-up mediation discussion on March 4, 2022. Those efforts did not produce a resolution. Plaintiff later participated in a Court-ordered referral to mediation and stay of proceedings pursuant to the parties' Joint Motion filed March 20, 2024 (ECF No. 80), and in a settlement conference before the Court in January 2026. Despite Plaintiffs' diligent and repeated efforts to settle this case, Defendants rejected every reasonable demand and elected to take the case through summary judgment and trial.

### A. EARLY ATTEMPT AT MEDIATION

The Parties proceeded to early mediation in this case. The November 23, 2021 Preliminary Pretrial Conference was vacated, and the case was referred to mediation in early 2022. *See* ECF No. 13. The mediation was conducted by Mediator Tony Merry, Esq on  February 17, 2022 but proved unsuccessful.   *See* ECF No. 17.

### B. SECTION 216(B) COURT SUPERVISED NOTICE

On April 19, 2022, Plaintiffs counsel filed Plaintiffs' Motion for Court Supervised Notice Pursuant to Section 216(b) ("Plaintiffs' Motion for Notice.").   *See* ECF No. 24. Defendant responded on July 19, 2022 (ECF No. 46) and Plaintiffs replied on August 23, 2022. *See* ECF No. 47.  Counsel argued the motion before this Court on February 24, 2023. *See* ECF No. 50.  This Court granted Plaintiffs Motion for Notice on March 13, 2023. *See* ECF No.51.  Plaintiffs' counsel engaged the services of a third-party administrator and issued notice to Defendants current and former tipped employees.  Following defendants' motions to dismiss certain opt-ins and other opt-ins filing to be withdrawn, ultimately 54 plaintiffs participated in the trial on this matter.

### C. DISCOVERY

Discovery in this matter was substantial and required significant time and resources. The Parties engaged in Representative Discovery of 20 Plaintiffs selected to be part of the Discovery Pool. *See* ECF No. 76.  Full written discovery was conducted of the Discovery Pool.  In September and October 2024, Plaintiffs' counsel traveled to St. Clairsville, Ohio for multiple weeks of depositions, including defending depositions of Ms. Pender and other twelve (12) other Plaintiffs and conducting three (3) depositions of defendants' witnesses. Plaintiffs' counsel conducted significant preparation sessions for each deponent. Discovery disputes regarding the topics posed in Plaintiffs' notice of Fed. Civ. R. P. 30(b)(6) deposition required extensive meet and confer and letter exchanges. Discovery was further complicated by Defendants' incomplete production of payroll and timekeeping records, which required Plaintiffs' counsel to reconstruct damages from

3

the documents that were produced, including through the Affidavit of Robert E. DeRose filed August 14, 2024. *See* ECF No. 93.

### D. MOTION FOR PREJUDGMENT ATTACHMENT

Based upon information learned during discovery, Comet Plaintiffs' counsel filed a motion for pre-judgment attachment, fearing that the defendants were going to file bankruptcy prior to any adjudication of the merits in this claim. *See* ECF No. 84. Defense counsel vigorously opposed the motion, which resulted ultimately in a hearing before this court on August 16, 2024. *See* ECF No. 95. The Court denied the motion on August 22, 2024. *See* ECF No. 97.

### E. CROSS MOTIONS FOR SUMMARY JUDGMENT

On November 18, 2024, Plaintiff filed her Motion for Partial Summary Judgment and supporting Memorandum. *See* ECF Nos. 108, 108-1. Defendants filed a competing Motion for Summary Judgment and Decertification of the Collective Action, along with a Supplemental Memorandum and thirteen exhibits. *See* ECF No. 106. The summary judgment proceedings required Plaintiffs' counsel to brief complex issues regarding the tip-credit provisions of 29 U.S.C. § 203(m), the propriety of representative evidence, and Defendants' record-keeping obligations under the FLSA. Following oral argument on August 7, 2025, the Court issued its Opinion and Order on September 2, 2025, granting Plaintiffs' motion in part, denying Defendants' decertification motion in its entirety, and granting in part and denying in part Defendants' summary judgment motion. *See* ECF No. 122.

After the Court's summary judgment ruling, Plaintiff again attempted to resolve the case. The parties exchanged demand and counter-demand correspondence in December 2025, and Plaintiff appeared at a Court-supervised settlement conference in January 2026. Settlement was not reached. Plaintiff was then required to prepare for trial under aggressive deadlines while simultaneously briefing nine motions in limine filed on January 16, 2026 (ECF Nos. 137–145), and responding to Defendants' motions in limine, exhibit list, and witness disclosures (ECF Nos.

146, 161, 163, 167). Plaintiffs' counsel also addressed Defendants' Motion to Withdraw as Attorney filed on January 29, 2026, approximately two weeks before trial, which the Court denied. *See* ECF No. 171.

### F.  TRIAL

Trials are expensive. They are extremely labor-intensive. Plaintiffs trusted their counsel to represent their best interests and obtain a verdict in their favor, or they could receive nothing (and potentially be responsible for Defendants' costs). This case is no different or less important than any other trial and certain aspects of the case made it more difficult. As expected, Plaintiffs' counsel devoted substantial time preparing for trial. Indeed, trial preparation required that Plaintiffs' counsel devote the majority of their time to this case to ensure the proper trial strategy and preparation. Plaintiffs' counsel conducted witness preparation sessions with Kayla Pender, Sara Bishop, and the representational opt-in Plaintiffs, in addition to multiple internal trial preparation meetings on January 24, 2026, and February 10, 2026. Counsel also catalogued, copied, and indexed thousands of pages of trial exhibits, payroll records, and deposition transcripts in the firm's office in preparation for the trial. Following the trial, Plaintiffs' counsel prepared a post-trial brief and responded to Defendants' post-trial brief.  After nearly five years of contested litigation, the case proceeded to a three-day bench trial before the Honorable Algenon L. Marbley. Following trial, the Court entered judgment in favor of the Plaintiffs. *See* ECF No. 197.

Pursuant to the Court's post-trial scheduling order, Plaintiffs' fee petition is due July 6, 2026. By this motion, Class respectfully request that this Court award their total attorney fees and litigation costs of **$323,104.60** (**$293,506.00** in attorneys' fees and **29,598.60** in litigation costs) pursuant to Section 216 (b) FLSA, 29 U.S.C. § 216(b).

### II.  ARGUMENT AND AUTHORITY

To summarize, Plaintiffs seek attorney fees in the amount of **$323,104.60** in attorneys' fees and litigation costs/expenses incurred by Plaintiffs' counsel. For the Court's convenience,

declarations of Plaintiffs' counsel in support of the instant motion are attached hereto. *See July 2 2026 Declaration of Robert E. DeRose, Esq.* attached as **Exhibit 1** ("**Ex. 1**"), and *See July , 2026 Declaration of Drew Herrmann, Esq.* attached as **Exhibit 2** ("**Ex. 2**"). Following the analysis with respect to the reasonableness of Plaintiffs' attorneys' fees and costs, Plaintiff will analyze the application of the Ohio Prompt Pay Act applies, as well as post-judgment interest should be included with the judgment. A note for the Court, HLaw is not seeking an award for their attorney's fees expended in this case, they are only seeking their firm's litigation costs and expenses. *See* **Ex. 2** at ¶¶ 5-6. Only BMDC is seeking both attorney's fees and litigation expenses.

### A. THE LODESTAR METHOD YIELDS A PRESUMPTIVELY REASONABLE FEE AWARD.

In light of the judgment rendered in Plaintiffs' favor, Plaintiffs are entitled, as a matter of law, to an award of reasonable attorney's fees and costs as a result of Defendants' violations of the FLSA[2] because it has a fee-shifting provision:

> The court in such action ***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (emphasis added).

"[T]he FLSA *requires* the Court to award attorney's fees against any employer who violates the FLSA, and the relevant statute, 29 U.S.C. § 216(b)." *Fulkerson v. Yaskawa America, Inc.*, No. 3:13-cv-130, 2015 WL 6408120, at *4 (S.D. Ohio Oct. 23, 2015). The federal courts have long recognized the profound importance of plaintiffs' right to recover attorneys' fees under the FLSA. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984), the Court recognized that an award of attorneys' fees is mandatory under 29 U.S.C. §216(b). The Court explained, that "the purpose of §216(b) is to insure effective access to the

---

[2] Likewise, Ohio Revised Code § 4111.10(A) provides that in a case involving unpaid overtime, the employer is liable "for costs and reasonable attorney's fees as may be allowed by the court."

judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages…without incurring any expense for legal fees or costs." *Id.*

Providing attorney's fees therefore is essential to ensure that low-wage workers will have access to counsel to enforce these important rights. Indeed, "[a]n award of attorneys' fees under the FLSA is *mandatory*, with the amount of fees within the discretion of the court." *Cruz v. Vel-A-Da, Inc.* Case No. 3:90CV7087, 1993 WL 659253, *3 (N.D. Ohio May 14, 1993) (citing *United Slate, Tile & Composition v. G & M Roofing*, 732 F.2d 495, 501 (6th Cir.1984)).

The standard for reviewing a request for attorney's fees is reasonableness. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). Congress has determined that it is important for FLSA rights to be enforced, and that reasonable attorney fees must be awarded to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant. *Fegley v. Higgins*, 19 F.3d 1126, 1134-43 (6th Cir. 1994). Thus, it is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages. *See City of Riverside v. Rivera*, 477 U.S. 561, 574, 578 (1986) (no rule of proportionality in cases awarding fees under § 1988, in order to ensure lawyers are available to represent persons with legitimate claims).

*Fegley v. Higgins* is the seminal Sixth Circuit case that stands for the fact that there is no requirement of proportionality between the attorney's fees and costs sought and the amount recovered for violations of the FLSA. 19 F.3d 1126, 1130 (6th Cir. 1994) (awarding attorneys' fees that were more than five times the amount awarded to the plaintiff). Since *Fegley*, many courts within the Sixth Circuit (including this Court) have regularly granted attorney's fees and costs in excess of the amount recovered to plaintiffs in FLSA cases. *See, Funk v. Airstream, Inc.*, 2019 WL 4599816 (S.D. Ohio 2019) (Rice, J) (awarding $171,663.01 in attorney's fees and costs where $21,338.00 was awarded to FLSA collective); *Macklin v. Delta Metals Company, Inc.*, 2011 WL

13070420 (W.D. Tenn. 2011) (awarding $48,802.02 in attorney's fees and costs after previously only awarding $300.15 in damages); *West v. Emeritus Corp.*, 2017 WL 2880394 (M.D. Tenn. 2017) (awarding approximately $9,000 in damages and $46,000 in fees and costs); *Abdelkhaleq v. Precision Door of Akron*, 2010 WL 395236 (N.D. Ohio 2010) (awarding $30,470.10 in attorney's fees and $3,948.96 in damages); *Ford v. Carnegie Management Services, Inc.*, 2017 WL 4390294 (S.D. Ohio 2017) (awarding $89,606.74 in attorneys' fees and costs, and $24,893.26 to class); Jasper v. Home Health Connection, Inc., 2016 WL 8202768 (S.D. Ohio 2016) (awarding $63,000 in attorneys' fees and costs, and $35,000 in damages to plaintiffs); Brantingham v. Emergency Services, Inc., 2017 WL 5175866 (S.D. Ohio 2017) (awarding $35,586.97 in attorneys' fees and costs, and $13,168.63 in damages to plaintiffs); *Moran v. Al Basit, LLC*, 2016 WL 8201648 (E.D. Mich 2016) (awarding $53,402.04 in attorney's fees and costs, and $13,350 in damages to plaintiff). Awarding attorney's fees and costs in excess of the amount recovered is not something that is unique to the Sixth Circuit, as many courts throughout the United States have also awarded and confirmed attorney fee awards in excess of the amount recovered.[3] The reason that the same principle has been consistently applied in the Sixth Circuit and throughout the United States is because without the recovery of attorney's fees and costs, many individuals like Plaintiffs who

---

[3] *See e.g., Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Doc. 819 (N.D. Ala. Feb. 17, 2009) (in an FLSA case in which three individual donning and doffing claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based on the attorney's lodestar hourly rates); *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-29 (7th Cir. 1972); *Perdomo v. Sears, Rosebuck & Co.*, Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *10 (M.D. Fla. Dec. 3, 1999); *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001); *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); *Perrin v. John B. Webb & Assocs.*, Case No. 604CV399ORLKRS, 2005 WL 2465022, *4 (M.D. Fla. Oct. 6, 2005) ("in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time"); *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Albers v. Tri-State Implement*, Inc., 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *King v. My Online Neighborhood, Inc.*, 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Feb. 20, 2007) (approving a settlement for $4,500 in unpaid wages and $10,500 in attorney's fees); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); *Holyfield v. F.P. Quinn & Co.,* 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).

have suffered from their employers not compensating them in accordance with the minimum requirements under the FLSA would not be able to enforce their legal rights.

In determining reasonableness of fees, it is reached through an evaluation of multiple factors, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees. *Burcham v. Taubra Corp.*, No. 3:17-cv-168, 2018 WL 3840827, at *2 (S.D. Ohio Aug. 13, 2018) (Rose, J.) (citing *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984)). The purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. *Id.* (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate*, 732 F.2d at 502)). "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] encourage[s] the vindication of congressionally identified policies and rights." *Id.* (quoting *Fegley*, 19 F.3d at 1135 (quoting *United Slate*, 732 F.2d at 503)).

As a general matter, reasonable attorney's fees are determined by way of the lodestar. "The lodestar figure represents the number of hours spent multiplied by reasonable rates." *Allen v. Silverback Moving Inc.*, No. 2:20-CV-03132, 2021 WL 4839248, at *3 (S.D. Ohio Jan. 19, 2021) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). A "strong presumption favors the lawyer's entitlement to his lodestar fee." *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "Accordingly, modifications to the lodestar are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings." *Id.* Here, BMDC reasonably expended **729.20** hours, for a lodestar of **$293,506.00** exclusive of litigation costs and expenses. *See* **Ex.1** at ¶ 19.

The Supreme Court has held that the lodestar method "yields a fee that is presumptively sufficient" to achieve the objective of providing reasonable compensation. *Perdue v. Kenny A. ex*

9

*rel. Winn*, 559 U.S. 542, 552 (2010) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), supplemented, 483 U.S. 711 (1987), *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The Sixth Circuit has held that after calculating the lodestar, the district court may adjust it to reflect case-specific considerations, "the most important of which is the degree of success that the attorney obtained." *Kritcher v. Prudential Security, Inc.*, 799 F. App'x 376, 379 (6th Cir. 2020) (citing *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575 (6th Cir. 2019)). Where a plaintiff achieves only limited success, the court should award only those fees that are reasonable in relation to the success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021), citing *Farrar v. Hobby*, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("…the amount of the plaintiff's recovery can be relevant to the amount of a fee award. Specifically, if a plaintiff is only partially successful in obtaining recovery on her claims, the court might reasonably award counsel a reduced fee").

Here, the degree-of-success factor weighs nearly undisputably in favor of awarding the full amount of reasonable attorneys' fees. Unlike cases in which a plaintiff prevails on only some claims or obtains only partial relief, Plaintiffs here achieved nearly complete success after nearly five years of litigation and a three-day bench trial. Plaintiffs prevailed on nearly every claim submitted for adjudication (except for willfulness and individual liability against the owners) and obtained all relief sought through trial. Under *Hensley*, the most important inquiry is the relationship between the results obtained and the fees incurred. *Hensley*, 461 U.S. at 436. Where a plaintiff obtains "excellent results," counsel "should recover a fully compensatory fee," and the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised during the litigation. *Id.* at 435.

The Sixth Circuit has likewise emphasized that the most important consideration in evaluating a fee award is the degree of success obtained. *Kritcher,* 799 F. App'x at 379; *Hubbell,*

933 F.3d at 575. In *Rembert*, the court explained that a reduction may be appropriate when a plaintiff achieves only partial success but declined to approve such a reduction where the plaintiffs obtained "100% of the recovery due to them under the [FLSA]." *Rembert,* 986 F.3d at 617. The same principle applies here. After almost five years of litigation, extensive discovery, motion practice, trial preparation, and a bench trial, Plaintiffs secured nearly complete success on the merits regarding their unpaid minimum wage claims. Because Plaintiffs prevailed on all unpaid minimum wage claims and obtained the full relief sought, there is no basis for reducing the lodestar based on limited success. The exceptional degree of success achieved confirms that the lodestar amount represents a reasonable fee and warrants a full award. See *Hensley* at 435–36.

### 1. CLASS COUNSELS' RATES ARE REASONABLE.

Plaintiffs' counsel maintains that the rates are reasonable in the Southern District of Ohio considering the complexity of the issues presented in the consolidated actions and the ultimate judgement on behalf of 54 plaintiffs.  This case required experienced counsel capable of litigating complex wage-and-hour issues through extensive motion practice, discovery, trial preparation, and trial.

The Sixth Circuit has instructed that a district court "should initially assess the prevailing market rate in the relevant community." *Smith v. Serv. Master Corp*., 592 Fed.Appx. 363, 369 (6th Cir. 2014), quoting *Adcock-Ladd v. Secy. of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). The default relevant community is the "geographic market where the district court sits…" *Klopfenstein et al. v. Fifth Third Bank*, No. 25-3258, 2026 WL 1601733, *8 (6th Cir. June 4, 2026), citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). Nevertheless, courts retain discretion to consider markets broader than the immediate locality. The Sixth Circuit explained that courts are free to look to a national market, an area-of-specialization market, or another market that fairly compensates attorneys in similar cases. *Smith,* 592 Fed.Appx. at 369 ., quoting *Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983). The district

11

court may also consider the attorney's experience, reputation, specialization, and skill in determining the appropriate rate. *Id.* at 370.

Current market rates, rather than historic market rates, of compensation, are appropriate to compensate for the delay in payment of fees. *See Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 107 S. Ct. 3078, 3082 (1987). *See also Gonter v. Hunt Valve Company, Inc.*, 510 F.3d 610, 617 (6th Cir. 2007) (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) and *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F.Supp. 953, 958 (6th Cir. 1988)) (applying the current rate rather than the historical rate due to the fact that compensation is often not received for several years).

Counsel's $600/hour rate is consistent with prevailing market rates for experienced wage and hour practitioners in the Southern District of Ohio. Courts in this District have approved rates ranging from $850 for managing partners to $350 for less senior attorneys in complex class and collective actions. *See Gilbert v. Abercrombie & Fitch*, Co., No. 2:15-CV-2854, 2016 WL 4159682, at *17 (S.D. Ohio Aug. 5, 2016), report and recommendation adopted, No. 2:15-CV-2854, 2016 WL 4449709 (S.D. Ohio Aug. 24, 2016) (approving class counsel's rates ranging from $850.00 for managing partners to $350.00 for less senior attorneys); *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376 at *6 (S.D. Ohio 2019) (approving hourly rates of $550 and $600 per hour); In class actions requiring specialized expertise, rates of $500 to $900 per hour have been recognized as reasonable. *See Hawkins v. Cintas Corp.*, No. 1:19-cv-1062, 2025 U.S. Dist. LEXIS 28378, at *13 (S.D. Ohio Feb. 18, 2025) (authorizing the use of nationwide market of rates ranging from $900.00 per hour to $250.00 per hour); *Klopfenstein v. Fifth Third Bank*, No. 25-3258, 2026 U.S. App. LEXIS 16272, at *26 (6th Cir. June 4, 2026) (approving use of out-of-forum rates where counsel possessed specialized expertise, had previously litigated a materially identical case, and their involvement was reasonably necessary given the complexity of the litigation). Moreover, The Southern District of Ohio has already approved DeRose's $600/hour rate in a recent

decision in *Erickson v. Walsh Construction Group, LLC*, No. 2:23-CV-03296, 2026 WL 1101968, *3 (S.D. Ohio April 23, 2026) (Sargus, J.), specifically finding the rate reasonable given his "significant experience."

Although Plaintiffs' counsel, BMDC, is geographically local to this forum, the relevant market inquiry should focus on the market for the specialized legal services actually provided, not the broader market for general litigation services. As the court recognized in *Hawkins v. Cintas Corp.*, where a practice area requires specialized expertise possessed by a relatively small number of firms, it is appropriate to look to the market for attorneys practicing in that specialty rather than to general local billing rates. *See Hawkins,* 2025 U.S. Dist. LEXIS 28378, at *13-14. ("Courts in this district have observed that ERISA litigation requires specialized expertise, and there are relatively few firms that have that expertise…This is a case, then, when the Court may 'look to national markets, an area of specialization,' or another market to determine a reasonable rate for Class Counsel's services.") (internal citations omitted). The same reasoning applies here. Complex FLSA and wage-and-hour litigation is a specialized field requiring expertise in collective-action procedure, exemption analysis, damages modeling, payroll and timekeeping systems, and evolving federal wage-and-hour jurisprudence. While many attorneys may handle employment disputes generally, relatively few firms within this forum regularly prosecute FLSA collective actions through certification, dispositive motions, and trial. As a result, the market for experienced FLSA counsel is considerably narrower than the market for general commercial or employment litigators.

Because so few firms in this forum regularly litigate complex FLSA cases, the best evidence of the prevailing market rate for such work is the rate *actually* charged by those firms that routinely perform it. In other words, the relevant market rate for specialized FLSA litigation cannot be determined by reference to attorneys who do not perform that work. Rather, it is reflected by the rates charged and paid in the comparatively small market of attorneys with substantial FLSA collective-action experience. Moreover, the Court's ability to assess prevailing

FLSA market rates is inherently limited because the overwhelming majority of wage-and-hour cases resolve through settlement before a fee petition is litigated to conclusion. As a result, there are relatively few published decisions examining the reasonableness of FLSA billing rates after adversarial briefing and judicial scrutiny. The cases that do proceed through fee litigation therefore serve an important function by providing some of the only judicially tested evidence of the prevailing market rate for specialized FLSA representation within the forum. For that reason, this Court should give substantial weight to evidence regarding the rates actually charged by the small number of firms, including BMDC, that regularly litigate FLSA collective actions and to prior fee awards involving those firms and similarly situated wage-and-hour practitioners.

Although each fee application must be evaluated on its own record, prior fee determinations and approvals by the same court are relevant evidence of the prevailing market rate and the reasonableness of the rate sought for this narrow practice area. Accordingly, the Court should evaluate counsel's requested rates by reference to the local market for experienced FLSA practitioners and not the broader market for general litigators. This narrower market most accurately reflects the rates necessary to attract competent counsel capable of successfully prosecuting complex wage-and-hour litigation.

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), the Sixth Circuit established six relevant factors in the analysis of determining reasonable attorneys' fees. These factors include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Id.* Out of all of the factors, the degree of success obtained is the most critical factor in determining the reasonableness of a fee award. *Funk v. Airstream, Inc.*, 2019 WL 4599816 at *2 (citing *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933) (emphasis added).

14

1.  **THE VALUE OF THE BENEFIT RENDERED TO THE PLAINTIFF FROM TRIAL SUPPORTS THE AWARD OF THE REQUESTED ATTORNEY FEES.**

It goes without saying that the value of the benefit rendered to the Plaintiffs weighs in their favor because they were the prevailing party in a bench trial. The Supreme Court defined prevailing parties as parties that achieve "success on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. The Supreme Court further explained that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989); *See also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 605 (2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties"). As noted above, at the close of trial, the judge returned a verdict of unpaid minimum wages in the amount of $65,719.49 for the West Virginia Plaintiffs and $54,521.13 for the Ohio Plaintiffs. In addition, the judge awarded the Plaintiffs additional compensation in the form of liquidated damages in the amount of $65,719.49 for the West Virginia Plaintiffs and $109,042.26 in treble damages for the Ohio Plaintiffs. In total, the Plaintiffs were awarded $295,002.37. This is an excellent result and, given that the degree of success obtained is the most critical factor in determining the reasonableness of a fee award, favors Plaintiffs' request for fees and costs. Indeed, but-for the efforts of Plaintiffs' counsel, Plaintiffs could not have achieved a more successful outcome in this litigation with respect to their claims as alleged in the Complaint. Certainly, Plaintiffs benefited from counsel's legal skill in obtaining such a successful result, including liquidated damages equal to 100% of their unpaid overtime compensation. As a result, this factor favors approval of Plaintiffs' request.

## 2.  THE HOURS EXPENDED ARE REASONABLE.

Only hours reasonably expended may be compensated. Courts have an obligation to review billing records and eliminate unreasonable time. *Smith* 592 Fed.Appx. at 367, quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990). The fee applicant bears the burden of documenting hours worked. *Moore v. Freeman*, 355 F.3d 558, 565-566 (6th Cir. 2004). Billing records must be sufficiently detailed to permit judicial review of reasonableness. *Smith* 592 Fed.Appx. at 371. Although attorneys need not record every minute in exhaustive detail, they must identify the general subject matter of the work performed. *Id.*

Here, Plaintiffs' counsel has satisfied that burden. Counsel maintained contemporaneous billing records throughout the litigation and has submitted detailed entries documenting the work performed, the date on which the work was completed, the attorney or legal professional who performed the work, the amount of time expended, and a description of the task performed. *See* **Ex.1** at ¶ 21. The billing records identify the general subject matter of each task and inherently demonstrate its connection to the prosecution of this action, including investigation of claims, written discovery, depositions, motions, trial preparation, trial, post-trial proceedings, and fee-related work. *See Id*. at ¶ 21.

The records are sufficiently detailed to permit meaningful judicial review of the reasonableness of the hours expended as required by *Smith.* They allow this Court to determine not only what work was performed, but also why the work was necessary to advance Plaintiffs' claims. Counsel has not submitted vague, generalized, or unsupported time entries. Rather, the billing records will provide a comprehensive account of the legal services rendered over the course of this litigation and establish that the hours requested were reasonably and necessarily expended in obtaining Plaintiffs' successful result. Because Plaintiffs' counsel has maintained detailed billing records and adequately documented the work performed throughout this case, the requested hours satisfy the standards articulated in *Moore* and *Smith* and must be deemed

16

reasonable.

Additionally, as noted above, Defendants were presented with repeated opportunities to resolve this case beginning at the outset of the litigation and continuing throughout the pendency of the case.[4] Plaintiffs' counsel's hours expended were reasonable. The billed hours were necessary for Plaintiffs to achieve the result that they did. Plaintiffs' counsel was responsible for nearly all of the first drafts of joint documents, including all trial documents submitted to the Court. Numerous motions were filed in this matter by the Parties and several resulted in hearing before the Court. Counsel conducted or attended multiple depositions and traveled extensively to St. Clairsville for that purpose. Counsel also engaged in substantial trial preparation, including deposition prep sessions, witness trial prep calls, a final pretrial conference, and day-of-trial parking expenses reflecting physical attendance across multiple trial days in February 2026. BMDC's billing records were maintained contemporaneously using Filevine case management software, ensuring reliability and sufficient detail for judicial review. *See* **Ex. 1** at ¶ 21.

### 3. SOCIETY'S STAKE IN REWARDING ATTORNEYS WHO PRODUCE SUCH BENEFITS ALSO SUPPORTS THE AWARD OF THE REQUESTED ATTORNEY FEES.

The factor, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive for others" also supports Plaintiffs' counsel's fee request. As this Court observed, wage and hour cases "have a value to society more broadly, both as deterrents to unlawful behavior-particularly when the individual injuries are too small to justify the time and expense of litigation – and as private law enforcement regimes that free public sector resources." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253 at *7 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016)). Wage and hour cases, like this one, often involve workers with relatively small individual claims. Though the claims are individually small, the unpaid overtime wages make a significant

---

[4] *See* Section I above.

17

difference in the lives of workers. Society has a strong interest in awarding attorneys who take on these cases and recover real benefits for exactly the type of workers the FLSA is designed to protect. Were it not for the work of attorneys such as Plaintiffs' counsel, the work of a number of employees, including Plaintiffs, would go uncompensated or undervalued. Moreover, the FLSA would not be enforced if attorneys like Plaintiffs' counsel were unwilling to prosecute the case to verdict. Application of the above principles to this case demonstrates that *Ramey*'s factor as to "society's stake in awarding attorney's fees" favors Court approval of Plaintiffs' Counsel's requested fee recovery.

### 4. THE FACT THAT THE SERVICES WERE UNDERTAKEN ON A CONTINGENT FEE BASIS ALSO SUPPORTS THE AWARD OF THE REQUESTED ATTORNEY FEES.

Despite having made significant investments of time, out-of-pocket expenses throughout this litigation, and precluded other employment opportunities due to trial preparation, Plaintiffs' counsel have received no compensation for this case. This case was handled on a pure contingency. Counsel advanced all fees and costs over nearly five years with no assurance of recovery. *See* **Ex.1** at ¶ 17 and **Ex. 2** at ¶ 4. The contingent nature of the engagement created substantial financial risk: had Plaintiffs not prevailed, counsel would have received nothing. A $600.00 hourly rate represents the minimum necessary to fairly compensate counsel for undertaking this risk. *In re Cardinal Health*, 528 F.Supp.2d at 766 ("Several courts consider the risk of non-recovery the most important factor in fee determination"); *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1043 (S.D. Ohio 2001) ("contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery"). Approving a lower rate would effectively penalize counsel for accepting a contingent engagement and discourage the prosecution of meritorious FLSA claims.

This factor weighs in favor of approving Plaintiffs' counsel's requested fee recovery. Here, Plaintiffs' counsel has devoted 729.20 hours to this action and have risked non-payment of

18

$293,506.00 knowing that, if their efforts are unsuccessful, they will recover nothing. HLaw spent considerable amount of time on this case despite not seeking attorney fees. *See* **Ex. 2** at ¶¶5-6. Further, the risks of non-payment were very real in light of factual uncertainties regarding the computation of Plaintiffs' wages owed and the uncertainty that comes with a bench trial. Given the risks of establishing liability and damages and the possibility of non-payment that has been present throughout this litigation, an award of the requested fee based directly upon Plaintiffs' counsel's time spent prosecuting Plaintiffs' claims is the fair result.

### 5. THE COMPLEXITY OF THE LITIGATION ALSO SUPPORTS THE AWARD OF THE REQUESTED ATTORNEY FEES.

Generally speaking, most wage and hour cases are inherently complex. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (albeit in the class action context) (internal citations omitted); *In re Telectronics*, 137 F.Supp.2d 985 at 1013. "FLSA actions are complex." *Snead v. Interim Healthcare of Rochester, Inc.*, 286 F.Supp.3d 546, 558 (W.D.N.Y. 2018). This matter resulted in a verdict of a judge only after vigorous and extensive investigation, discovery, and litigation. Though the subject matter of the lawsuit was not unfamiliar to Plaintiffs' counsel, Plaintiffs' counsel faced a variety of hurdles at various stages through this matter, including litigating conditional certification proceedings, extensive written discovery, a motion for prejudgment attachment, multiple rounds of summary judgment motion practice, oral argument before Judge Marbley, and ultimately a three-day bench trial. The case required complex damages modeling across 54 plaintiffs and multiple years, with discovery compliance challenges from numerous opt-in plaintiffs. The case also involved the added complexity of a tip credit defense, four corporate defendants, two individual owner-defendants, and a motion to decertify the collective.

Plaintiffs' Counsel has demonstrated a substantial commitment of time to this action during the past five years. "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to

19

which counsel is entitled." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)). That presumption applies to Plaintiffs' request because their attorney has culled his hours, his rates have previously been approved by this Court, have either reduced and/or not billed for duplicative time, and have further established their rates and fees are appropriate in light of their expertise and skill. *See* **Ex.1** at ¶ 22.

### 6.   THE PROFESSIONAL SKILL AND STANDING OF COUNSEL.

The final *Ramey* factor, "the skill and efficiency of the attorneys," also favors Plaintiffs' counsel's requested fee recovery. *Wright*, 2018 WL 3966253 at *7. Fee applicants are to exercise "billing judgment," i.e., to exclude from their fees excessive, redundant or otherwise unnecessary hours, which would be unreasonable to bill a client. *See West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914, 921 (S.D. Ohio 2009) (quoting *Hensley*, 461 U.S. at 437). Here, counsel has taken affirmative steps to avoid excessive, redundant or duplicative hours during the litigation of this matter. *See* **Ex.1** at ¶¶ 20-22 and **Ex. 2** at ¶¶1-2.

The services rendered to Plaintiffs reflect the extensive experience Plaintiffs' counsel have in wage and hour matters under the FLSA and employment law, experience that is outlined in the declarations submitted by Plaintiffs' counsel to the Court. *See* **Ex.1** at ¶¶ 7-16 and **Ex. 2** at ¶¶1-2. Rather than repeating Counsel's qualifications here, Plaintiffs' Counsel refers the Court to the attached Declarations. *See* **Ex.1** at ¶¶ 7-16 and **Ex. 2** at ¶¶1-2.

This case demanded skills beyond general employment litigation, including FLSA collective action certification strategy, complex damages modeling across multiple plaintiffs and years, pre-judgment attachment motion practice, oral argument before Judge Marbley, and ultimately conducting a bench trial. Counsel developed and executed a successful trial strategy involving the tip credit defense. In summary, based on Plaintiffs' Counsel's extensive experience and their efforts throughout this litigation to achieve an excellent result on behalf the Plaintiff,

the "skill and efficiency of the attorneys" factor weighs in favor of Court approval of the requested fee recovery. *See* **Ex.1** at ¶¶ 7-16 and **Ex. 2** at ¶¶1-2.

### B. CLERICAL WORK

Plaintiffs' counsel has taken care to distinguish between compensable legal work and non-compensable clerical or administrative tasks. To the extent administrative functions were performed during the course of and in furtherance of this litigation, those tasks were delegated to appropriate support staff at their respective billing rates. *See* **Ex.1** at  23. Purely clerical or administrative tasks are not compensable at attorney rates. *Smith v. Serv. Master Corp.*, 592 Fed.Appx. 363, 371–72 (6th Cir. 2014). In *Smith*, the Sixth Circuit remanded for consideration of objections asserting that attorneys billed for clerical work. *Id. Smith* warned district courts to consider whether billed work constitutes legal work warranting compensation or merely clerical functions that should not be billed at attorney rates. *Id.*

The hours included in the fee application reflect substantive legal work requiring the exercise of professional judgment, including case strategizing, drafting pleadings and motions, preparing and responding to discovery, conducting depositions, communicating with opposing counsel regarding substantive case matters, preparing for trial, trying the case, and addressing post-trial issues. The accompanying billing records identify the nature of the work performed and permit the Court to distinguish legal services from administrative tasks.

Moreover, counsel reviewed the billing records before submitting this fee petition to ensure that the requested hours are limited to work properly compensable under the applicable standards. *See* **Ex.1** at ¶ 17 and **Ex. 2** at ¶ 10. As a result, the fee request does not seek compensation for purely clerical functions at the attorney's rate and instead reflects only those hours reasonably expended on legal services necessary to prosecute Plaintiffs' claims successfully. Accordingly, the concerns *Smith* calls out regarding attorney billing for clerical work are not present here, and no reduction is warranted on that basis**.**

**III.     EXPENSES AND LITIGATION COSTS**

Class Counsel incurred $**29,598.60** in reasonable and related costs and expenses prosecuting this matter on behalf of the Settlement Class Members. *See* **Ex.1** at ¶¶ 18-19 and **Ex. 2** at ¶¶ 8-10.

**IV.     CONCLUSION**

For these reasons, Plaintiffs respectfully request this Court grant this Motion and approve the requested attorneys' fees and costs in the amount of $**323,104.60**.

Dated: July 6, 2026                        Respectfully submitted,

*/s/ Drew N. Herrmann*                    */s/Robert E. DeRose*
Drew N. Herrmann                          Robert E. DeRose (0055214)
(Admitted *pro hac vice*)                  **BARKAN MEIZLISH DEROSE COX, LLP**
Pamela G. Herrmann                        4200 Regent Street, Suite 210
(Admitted *pro hac vice*)                  Columbus, OH 43219
**HERRMANN LAW, PLLC**                     Phone: (614) 221-4221
801 Cherry St., Suite 2365                Fax: (614) 744-2300
Fort Worth, TX 76102                      Email:        bderose@barkanmeizlish.com
Phone: 817-479-9229
Fax: 817-840-5102
drew@herrmannlaw.com
pamela@herrmannlaw.com                     *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Ohio, using the electronic case filing system of the court.

                                        /s/ *Robert E. DeRose*
                                        Robert E. DeRose

22